UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------
DOV SPITEZKI
on behalf of himself and
all other similarly situated consumers

                                          15 CV 6629 (CBA) (MDG)

                    Plaintiff,

            -against-


STEPHENS AND MICHAELS ASSOCIATES, INC.
AND PINNACLE CREDIT SERVICES, LLC

                  Defendants.


--------------------------------------------------------

## AMENDED CLASS ACTION COMPLAINT

### *Introduction*

1.    Plaintiff Dov Spitezki seeks redress for the illegal practices of Stephens and Michaels Associates, Inc. and Pinnacle Credit Services, LLC concerning the collection of debts, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA").

### *Parties*

2.    Plaintiff is a citizen of the State of New York who resides within this District.

3.    Plaintiff is a consumer as that term is defined by Section 1692(a)(3) of the FDCPA, in that the alleged debt that Defendants sought to collect from Plaintiff is a consumer debt.

4.    Upon information and belief, Defendant Stephens and Michaels Associates, Inc.'s principal place of business is located in Salem, New Hampshire.

5.    Upon information and belief, Defendant Pinnacle Credit Services, LLC's principal place of business is located in St Louis Park, Minnesota.

6.     Defendants are regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

7.     Defendants are "debt collectors" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

### *Jurisdiction and Venue*

8.     This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

### *Allegations Particular to Dov Spitezki*

10.    Debt Collectors like Defendant Pinnacle Credit Services, LLC use the credit reporting mechanism as a tool to persuade consumers to pay their debts, just like dunning letters and telephone calls. "[C]redit reporting is one of the most commonly taken steps in debt collection efforts."[1]

11.    The purpose of the credit reporting system is to both pressure and reward consumers to timely pay their debts by denying them good credit if they fall behind and allowing them good credit if they keep up.

12.    The difference between a good and bad credit rating may fundamentally alter the financial outlook of individuals and families.

13.    The widespread use of credit reporting, not only by financial companies but also by insurers, landlords, and employers, has effectively turned credit reporting into a broadly yet all too often underlined abused tool for collection.

---

[1] Koller v. West Bay Acquisitions, L.L.C., 2012 WL 1189481, at *5 (N.D. Cal. Apr. 9, 2012).

14.     "A creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed, in part, to wrench compliance with payment terms from its cardholder". [2]

15.     If Debt Dollectors could just report all types of debt including erroneous, non-existent or disputed debts to the credit bureaus then any such free reign of credit reporting would enable debt collectors to effectively ruin all non-paying debtors' credit, regardless of the disputed nature of the deb.

16.     This capability had it existed would no doubt turn all Debt Collector credit reporting in to an effective tool of blackmail regardless of the debts actual validity.

17.     It is self-understood that had such a powerful extortion tool existed in a Debt Collector's arsenal it would give the debt collector a level of leverage that is frightfully abusive and it would succeed in extracting payment from all debtors regardless of the debts actual validity.

18.     For this reason Congress has placed substantial limits on the credit reporting collection tool.

19.     Under the FDCPA, Debt Collectors cannot hijack a debtor's credit, and they certainly cannot hold a debtor's credit hostage if the debt is disputed.

20.     Debt Collectors frequently will threaten to harm the consumer's credit as a cost effective way to coerce payment of any debt.

21.     However, the FDCPA requires that debt collectors advise the consumers, whose debts they seek to collect, of specified dispute rights which congress instituted with the FDCPA.

22.     The FDCPA also prohibits a debt collector from unilaterally determining the validity of any debt or dispute.

---

[2] Rivera v. Bank One., 145 F.R.D. 614, 623 (D.P.R. 1993).

23.     The dispute rights afforded by the FDCPA just require oral or written notification of a

        dispute by the debtor and do not hinge on the debtor's reason for the dispute, rather the

        FDCPA's dispute rights give the debtor the absolute and unequivocal right to contest or

        dispute any debt. See *Mendez v. M.R.S. Assoc.*, 2004 WL 1745779 *2 (N.D. Ill. Aug. 3,

        2004). (A consumer is entitled to dispute the validity of a debt for a good reason, a bad

        reason, or no reason at all), <u>Whitten v. ARS National Servs. Inc.,</u> 2002 WL 1050320 *4

        (N.D. 111 May 23, 2002). (Imposing a requirement that a consumer have a `valid' reason

        to dispute the debt is inconsistent with FDCPA)

24.     These statutory rights protect the debtor from becoming the victim of a grueling cross-

        examination by the debt collector who would be inquiring as to the nature of the dispute

        and would unilaterally subject the debtor to a self-governing interrogation, deliberation

        and determination as to the disputes validity as well as the debtor's guilt or innocence.

25.     Congress has identified as harmful the failure to report a disputed debt as disputed, and,

        the wisdom of that policy choice which requires debt collectors to accurately report that a

        consumer raises a dispute does serve a purpose, and a critical one.

26.     When a Debt Collector reports to a Credit Reporting Agency that a debt is disputed, that

        notation of dispute will be reflected in the consumer's credit report; however, the report

        will not be so notated simply because the consumer has submitted a dispute with the Credit

        Reporting Agency.

27.     Therefore, only a Debt Collector-acknowledged dispute informs other creditors who view

        the consumer's report of the dispute and thus allows them to take the dispute into

        consideration when evaluating the consumer for credit granting purpose.

28.    Most importantly, credit scoring models take a dispute reported by the furnisher into

consideration, and *they ignore any debt that the furnisher has marked as disputed.[3]*

29.    During the pendency of a dispute, the credit scoring models will not take negative

information into account in calculating the credit-score if the account is disputed.[4]  See.

*FTC and FRB, Report to Congress on the Fair Credit Reporting Act Dispute Resolution*

*Process 22, n.139 (2006)[5]* (citing e-mail from Fair Isaac stating that its scoring models do

take into consideration that an item is subject to a dispute that is being investigated),

*available at* www.ftc.gov.

30.    However, this is only true if the Debt Collector, not the consumer, reports that the

information is disputed. See Saunders v. Branch Bank & Trust Co., 526 F.3d 142 (4th Cir.

2008). (when a furnisher reports an ongoing dispute by the consumer, TransUnion does

not include the disputed information in assessing the consumer's credit score)

31.    Debt collectors like Pinnacle have recognised that when debtors exercise the dispute rights

afforded them by the FDCPA, it throws a proverbial wrench into their unregulated and

self governed use of the - credit reporting - weapon of mass-extortion.

32.    Under the FDCPA, "[O]nce a debt has been disputed, a debt collector cannot communicate

the debt or consumer's credit information to others without disclosing the dispute... The

right to dispute a debt is the most fundamental of those set forth in [the FDCPA], and it

was reasonable to ensure that it could be exercised [orally] by consumer debtors who may

---

[3] The Fourth Circuit noted this fact in *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 146-47 (4th Cir. 2008), finding that "if BB & T had [reported the debt as disputed], Trans Union would have reported both the debt and the dispute and would not have considered the debt in determining Saunders' total credit score. Thus, BB & T's decision to report the debt but not the dispute resulted in a much lower credit score for Saunders than a report of both the debt and the dispute."

[4] See, e.g., Toliver v. Experian Info. Solutions, Inc., 973 F. Supp. 2d 707, 711–12 (S.D. Tex. 2013) ("[w]hen the dispute notations were removed, however, Toliver's credit score declined significantly. . . . w]hen the dispute notation was added back, her credit score increased significantly.")

[5] (www.ftc.gov/os/comments/fradispute/P044808fcradisputeprocessreporttocongress.pdf)

have some difficulty with making a timely written challenge. Such debtor consumers would also undoubtedly benefit from ... <u>having the fact of the dispute reported whenever the debt collector communicates with others about the debt, in accordance with § 1692e(8).</u>"[6]

33. "Collector's must communicate that a debt is disputed. The FDCPA does not give debt collectors the authority to determine unilaterally whether a dispute has merit." [7]

34. Upon information and belief, on a date better known by Defendants, Defendants began to attempt to collect an alleged consumer debt from the Plaintiff.

35. Plaintiff saw a delinquent account show up on his report and called the number provided on the report in order to inquire and dispute the information on his report.

36. On or about March 17, 2015, the Plaintiff spoke to Pinnacle and attempted to dispute the debt showing up on his credit report.

37. The Plaintiff also requested that the Defendant Pinnacle have the debt reported on his credit report as disputed.

38. The Defendant, Pinnacle, informed the Plaintiff that it would not take his dispute nor would it report it as disputed, but rather, the Plaintiff would have to talk to Defendant Stephens since Stephens handles all these matters.

39. The Plaintiff then called Defendant Stephens on or about March 17, 2015 and spoke to a representative by the name of Paul telling him that he, Plaintiff, had been directed by Defendant Pinnacle to call Defendant Stephens regarding the account on his credit report.

---

[6] <u>Hooks v. Forman, Holt, Eliades & Ravin, L.L.C.</u>, 717 F.3d 282 (2d Cir. 2013).
[7] <u>Semper v. JBC Legal Group</u>, 2005 WL 2172377 (W.D. Wash. Sept. 6, 2005).

40.     The Plaintiff informed Defendant Stephens that he was attempting to dispute the alleged debt and wanted to ensure that both Defendants would report the debt as disputed with the national credit bureaus.

41.     The Defendant Stephens, had no information about what was currently being reported on Plaintiff's credit report and also inquired as to the reason and nature of the Plaintiff's dispute,[8] and further stated that it does not report such information to the credit bureaus and it is the credit bureaus' job to mark a debt as disputed.

42.     The Plaintiff again informed Stephens that he had called Defendant Pinnacle and Pinnacle had not wanted to accept his dispute, and had directed him to rather lay his dispute before Stephens.

43.     It is contrary to the FDCPA for one debt collection agency in this case Pinnacle - who has a duty to discuss and investigate disputed information on the credit report - to instead direct a consumer to correspond with another agency, Stephens - thereby sending the consumer on a cat and mouse chase.

44.     Specifically it is a violation of the FDCPA to hire an agency tasked with the duty to discuss the information on the credit report, yet to intentionally cause that agency not to have any credit report information thereby abusing the credit reporting collection tool and effectively circumventing the dispute processes.

---

[8] Semper v. JBC Legal Group, 2005 WL 2172377 (W.D. Wash. Sept. 6, 2005). (Collector's must communicate that a debt is disputed. The FDCPA does not give debt collectors the authority to determine unilaterally whether a dispute has merit.), Hoffman v. Partners in Collections, Inc., 1993 U.S. Dist. LEXIS 12702 (N.D. Ill. Sept. 13, 1993). (The court held that the FDCPA did not require that the consumer notify the agency of his basis for disputing the debt, or that any stated reason for the dispute had to be one that would relieve the consumer of any part of the liability for the debt. The complaint alleged that the consumer notified the collection agency that the debt was disputed and that the agency did not cease collection of the debt until it obtained verification of the debt. The complaint was sufficient to allege a violation of 15 U.S.C. § 1692g(b). The court also held that the complaint sufficiently alleged a violation of 15 U.S.C. § 1692e(8) by stating that the agency reported the disputed debt to credit agencies without disclosing that it had been disputed. The court noted that " There is no requirement that any dispute be "valid" for this statute to apply; only that there be a dispute." Failure to communicate a dispute whether or not valid will violate 15 U.S.C. § 1692e(8) for failure to communicate that a disputed debt is disputed.)

45. Defendant Pinnacle, as a matter of pattern and practice, tells debtors that Stephens is handling the accounts that are being reported to the credit reporting agencies, yet Stephens does not have any of the reporting information which is necessary to investigate the dispute.

46. Stephens does not have any of the information Pinnacle reported, so Stephens cannot address any of the wrong information currently being reported to the credit reporting agency's since they don't have any reporting information that is being reported by Pinnacle.

47. On average, a furnisher like Pinnacle reports over twenty pieces of information about any given debt to the Credit Reporting Agency.

48. Stephens does have some information about the debt but does not have any information about what Pinnacle reported to the credit bureau regarding any of the debts it collects.

49. Pinnacle does not inform Stephens what information it reported on the consumer's credit reports

50. The consumer does not have an intelligent or effective way to discuss or dispute the information currently being reported on the report by Pinnacle.

51. Stephens does not have any information that is being reported for example they do not know when the delinquent account was first reported to the credit bureaus.

52. Stephens does not know when the account will come off the credit report.

53. Stephens does not know how late the account shows up on the credit report

54. Stephens does not know how and when a dispute should or will be updated on the credit report.

55.     Stephens does not know what is currently being reported.  Stephens cannot intelligently discuss or even rectify any errors currently being reported on the debtors credit report despite being tasked with the office that handles the credit reporting inquires for this account that is appearing on the consumer's credit report.

56.     For purposes of credit reporting, Defendant Pinnacle and Defendant Stephens are one and the same scheming entity.

57.     The Defendants engage in racketeering as both companies have effectively established that they are intentionally not on the "same page" with regard to the credit reporting and its policies and practices.

58.     The Defendants failed to communicate that a disputed debt is disputed, in violation of 15 U.S.C. § 1692e(8).[9]

59.     Defendants have developed a scheme designed to avoid addressing consumer credit inquiries and disputes

60.     Defendants have developed a scheme designed to avoid accepting a consumer's disputes.

61.     Defendants have developed a scheme designed to evade reporting a consumer's dispute to the Credit Reporting Agencies.

62.     Pinnacle has admitted to this Court that despite hiring Stephens to handle its dispute process even if Stephens would violate the FDCPA pinnacle would somehow not be liable.

---

[9] *Purnell v. Arrow Fin. Servs., LLC*, 2007 U.S. Dist. LEXIS 7630, 2007 WL 421828 ( E.D. Mich. Feb. 2, 2007). (The court stated "Congress has identified as harmful the failure to report a disputed debt as disputed, and, whatever the wisdom of that policy choice, Congress did not distinguish between communications that were intended and knowing as opposed to unintended and automatic. Indeed, the "directly or indirectly" language of Section 1692a(2) suggests that Congress saw no difference between the two. From the perspective of a consumer disputing a debt, it similarly matters not how it is that a dispute marker is lost. The harm inheres in the simple fact that information about an apparently undisputed debt in that person's name exists in the credit reporting industry, which can have untold negative consequences for people who engage in commerce.")

63.     Specifically in <u>Spitezki v. Stephens & Michaels Associates, LLC et al</u> CASE #: 1:15-cv-06629-CBA-MDG Doc 5, <u>Pinnacle</u> stated to this court "insofar as Plaintiff would seek to hold Pinnacle vicariously liable for the actions of Stephens, the claim would fail because he does not allege, nor could he, that Pinnacle had any control over Stephens."

64.     One such strategy Pinnacle has adopted, in order to avoid reporting the disputed status of consumer debts to the Credit Reporting Agency, is to report the debt in its own name and then simultaneously when reporting to the Credit Reporting Agency, Pinnacle reports its contact information, and its telephone number, but when a debtor calls the contact number listed on the credit report to dispute and discuss the information being reported, she is told by Pinnacle that she (the consumer) cannot discuss or dispute the debt with Pinnacle.

65.     The unfortunate reality as set forth in paragraph 64 is despite the fact that Pinnacle has deceptively provided its own phone number in order for Debtors to dispute and discuss the debt.

66.     Most notably, Pinnacle does not transfer the debtor to the proper agent or agency to whom the debtor would be able to dispute the debt; instead, Pinnacle tells the debtor that she needs to hang up and call another number for a different collection agency which was supposedly hired to collect the debt and address consumer credit inquiries.

67.     Upon information and belief, this third party agency is hired in order to avoid complying with the FDCPA and the FCRA.

68.     Upon information and belief, this third party agency is hired by Pinnacle to avoid liability for violations of the FDCPA and FCRA.

69.     As mentioned above, Pinnacle has specifically stated to this Court: "<u>insofar as Plaintiff would seek to hold Pinnacle vicariously liable for the actions of Stephens and Michaels,</u>

<u>the claim would fail because he does not allege, nor could he, that Pinnacle had any control</u>

<u>over Stephens and Michaels</u>."

70.     Upon information and belief, this third party agency hired by Pinnacle is intentionally not

provided with proper information about the credit reports in order to aid Pinnacle to escape

complying with its Federal Credit Reporting Obligations.

71.     A Debt Collector is in violation of the FDCPA when it reports a consumer's debt to the

credit reporting agencies, and then intentionally provides the wrong contact information

needed to dispute or discuss that debt.

72.     A debt collector is in violation of the FDCPA when it reports a consumer's debt to the

credit reporting agencies and does not provide contact information in order for the debtor

to informatively and intelligently discuss the debts details being reported on his credit

report.

73.     It is abusive and misleading and in violation of FDCPA to circumvent the dispute process

by providing the wrong contact information necessary, for debtors to properly dispute or

discuss the information about their debt currently on their credit reports.

74.     A debtor does not need to play cat and mouse in order to dispute or discuss his debt on his

credit report.

75.     Plaintiff sought to dispute his debt which showed up on his credit report, and when calling

the number on his report, he reached Pinnacle, yet pinnacle mandated that the debtor hang

up and call another agency named Stephens who had no information about what was

reporting on Plaintiff's credit report.

76.     Defendants used an abusive deterrent to exercising ones dispute rights especially since

Pinnacle's agent, Stephens, did not have any proper information about Plaintiff's credit

report.

77. Upon information and belief, Stephens did not forward the dispute back to Pinnacle.

78. Stephens is in violation of the FDCPA for being an accomplice to Pinnacle by claiming to have no knowledge of the details being reported to the Credit Reporting Agencies despite being tasked as the agency hired to deal with all credit report inquiries.

79. During the call with Pinnacle, the representative did not offer to transfer the call to Stephens.

80. Pinnacle was not collecting the debt in-house, and the Pinnacle operator had not offered to transfer the call to its dispute department.

81. Pinnacle could have transferred the call to an in-house dispute department or an outside collection firm with which it had contracted to handle these credit report disputes.

82. Pinnacle was obviously free to have its operator transfer the call to the appropriate person charged with that task, yet it did not such thing rather Pinnacle mandated that the Plaintiff hang up.

83. Plaintiff made the phone call with the intention of disputing the debt, and Plaintiff could not have accomplished that task before concluding the call.

84. In light of this, it is clear that the last sophisticated consumer would be "uncertain as to her rights." Savino v. Computer Credit, Inc., 164 f.3d 81, 85 (2d Cir. 1998), since it would not be apparent that the plaintiff could dispute the debt with pinnacle. See Khan v. Pinnacle Credit Services, LLC, 1:15-cv-02266-ARR-MDG (E.D.N.Y. Jan. 27, 2016) (ECF Doc. No. 23).

85. Pinnacle did not transfer the call to another one of its agents to dispute the debt, rather Pinnacle mandated that the debtor hang up and call another agency in order to dispute the

debt.

86.     This other agency named Stephens did not know about the Plaintiff's credit report and was not equipped to properly take the dispute.

87.     Pinnacle reported the debt to the Credit Reporting Agencies after Plaintiff made his dispute on March 17, 2015.  Pinnacle did not include that notation of dispute.

88.     Upon information and belief, Stephens is complicit with Pinnacle in not reporting the debt to the Credit Reporting Agencies post the dispute.

89.     Stephens knew or should have known that it is tasked on a daily basis to collect on debts that are currently being reported to the credit bureaus.

90.     Upon information and belief, Stephens finds it more lucrative to "play dumb" as to its credit reporting obligations in order to extract payment out of its debtors.

91.     When the Plaintiff inquired about the debt being reported to the credit bureaus as being disputed, Stephens could not answer any questions regarding the dispute being forward to the credit bureaus the following month.

92.     Specifically in the transcript produced by Stephens has the following exchange.

> SMA: Well, what happens is, we have already put it into -- we have already put a validation request in to them, which basically states that you're disputing the account. . . . So they're going to have to produce all the records that are involved with this account and then they will send us a copy and then we will send them to you.
> PLAINTIFF: Okay. I understand that, but I need you guys to report it as disputed – I need them to report it as disputed.
> SMA: Okay. We don't do that, sir. That – that would be something that they would have to do, and once we put it on the system as disputed, it goes back to them electronically that it's disputed. . . .
> PLAINTIFF: Okay. But they told me to speak to you guys in order for them to report it as disputed.
> SMA: Yeah. We don't do that in our office. We don't even mark your credit that it was turned over to our office for collection.
> PLAINTIFF: So – so there's basically no way to dispute my account with you guys?

> SMA: You've already disputed it. We've already logged the
> dispute. . . . We did that this morning – well, actually this afternoon
> at 3:07.
> PLAINTIFF: But I would also like to dispute it on my credit report.
> SMA: Well, that's something you need to take up with the credit
> bureau report. You do that directly to the credit bureau, and then
> the credit bureau report will go back to the person that's reporting
> it and have them verify it.

93.   Stephens deceptively acts as if it is entirely clueless about the need to facilitate a debtor's

right to have his debt reported as disputed to the credit bureau the next month when the

debt would be reported.

94.   Stephens deceivingly stated that if Plaintiff wants to dispute it on his credit report then

that is something he would need to take up with the credit bureau, and that he would do

that directly with the bureaus.

95.   Despite the fact that the Plaintiff asked the same question over and over again when he

specifically asked a simple question Stepens intentionally gave him false misleading

information.

> PLAINTIFF: Okay. So I have a simple question. Next month is it
> going to be reported on my credit report as disputed or not?
> SMA: I don't – I don't do the credit reporting, sir. My office doesn't
> do that at all. You would need to – the issues that you are having
> and what you need to address, you need to address directly to the
> credit bureau.

96.   The following month, in April 2015, despite the fact that the Plaintiff disputed the debt

with Stephens and Pinnacle, Pinnacle did report the debt, but did not report the debt as

disputed and Plaintiff's credit score was severely damaged due to the failure of Pinnacle

and Stephens to properly notate and report his dispute.

97.   Stephens is well aware that the debts being collected by its office are being reported on a

monthly basis to the credit reporting agencies by Pinnacle, yet despite this awareness,

Stephens intentionally gives false information regarding the reporting of the dispute to the credit bureaus.

98.    Stephens was tasked by Pinnacle as the agency that would be responsible for all credit reporting inquires and disputes.

99.    Pinnacle, as a furnisher of credit information and accounts to the credit reporting agencies, has a duty under Federal law to make available to its agents all the details they are reporting to the credit reporting agencies.

100.   Pinnacle violated the FDCPA when it used the credit reporting tool and reported to the credit bureaus yet at the same time Pinnacle efficiently deprived its agents handling those accounts from the proper credit report information about the delinquent accounts showing up on the credit reports.

101.   Pinnacle violated the FDCPA when it used the credit reporting tool and reported to the credit bureau, yet its agents who are handling those accounts lacked any information that was reporting on the credit report.

102.   Pinnacle violated the FDCPA when its agents, who are handling the credit bureau reporting, did not know anything about the dispute process.

103.   Pinnacle violated the FDCPA when its agents, who are handling the credit bureau reporting, did not know if and when the account would be updated as disputed.

104.   Pinnacle violated the FDCPA when its agents, who are handling the credit bureau reporting and dispute process, misleadingly state that in order to have a dispute reported the next month as disputed on the credit report, the debtor would need to contact the credit bureau and address it directly with them.

105.   Stephens cannot be the office that is handling the credit reporting when it does not have

any information about the Debtors' credit report or what is being reported on that report.

106.    Stephens violated the FDCPA since as an agent for the furnisher of credit information to the credit reporting agencies, it had a duty to know and obtain all the details that are reporting to the credit reporting agencies.

107.    Stephens violated the FDCPA when its agents, who are handling credit bureau disputes for the Pinnacle accounts, lacked any information about how the delinquent account is showing up on the credit bureau report.

108.    Stephens did not have any of the relevant credit reporting information in its office despite being the office tasked to handle all credit reporting information and disputes.

109.    Stephens violated the FDCPA when its agents, who are handling the credit bureau reporting for Pinnacle, did not know anything about the dispute processes, or if and when the account would be updated as disputed.

110.    Stephens violated the FDCPA when its agents, who are handling the credit bureau reporting and dispute process, misleadingly stated that in order to have a dispute reported the next month as disputed on the credit report the debtor would not need to contact the credit bureau and address it directly with them.

111.    It was false, deceptive and misleading to state that Plaintiff would need to address his concern directly with the credit bureau despite multiple requests to Stephens to have the debt reported as disputed.

112.    The following month, when Pinnacle reported the debt to the credit bureaus, it was not reported as disputed.

113.    Stephens is complicit in failing to have Plaintiff's debt reported to the credit reporting agencies as disputed.

114. Stephens is in violation of the FDCPA for giving the Plaintiff false and misleading information regarding the dispute processes, and how Plaintiff he can go about having his dispute reported to the credit bureaus.

115. Despite Stephens' claim to electronically forward the dispute to Pinnacle, Pinnacle reported the debt after Plaintiff made his oral dispute, and Pinnacle did not include a notation of dispute.

116. Upon information and belief, Stephens did not report the debt to Pinnacle in violation of 1692e(8).

117. Pinnacle, when reporting to the credit reporting agencies after the dispute, did not report the dispute in violation of 1692e(8).

118. Pinnacle's conduct was false, deceptive and misleading since it did not transfer the Plaintiff to an agent or agency so he could effectively dispute the dept.

119. Pinnacle's conduct was false, deceptive and misleading since it effectively avoided reporting Plaintiff's dispute even after being on notice of said dispute.

120. Pinnacle was obligated to report Plaintiff's debt as disputed since it engaged in a post-dispute communication with the credit bureaus. See Exhibit A.

121. The report attached in Exhibit A, dated April 16, 2015 shows that Pinnacle did report the debt to the credit bureaus on April 11, 2015, yet it failed to notate the disputed status of the debt despite the fact that plaintiff disputed the debt on March 17, 2015.

122. Pinnacle violated the FDCPA since it reported information about the debt that it knew to be false at the time that the reporting was made. See Janjua v. Ocwen Loan Servicing LLC, 1:14-cv-06303-CBA-JO (E.D.N.Y. Feb. 26, 2016). (Bagley, J.) ("[T]he plain language of 1692e(8), indicates that a debt collector violates this provision if it

communicates information about a debt that it knows or should know to be false at the time the communication is made.")

123.   Pinnacle has admitted to this scheme of avoiding liability for its failures in communicating proper information about the debt.

124.   In fact, as mentioned above, Pinnacle has written to this Court that it does not have any control over the Stephens Defendant, and that Pinnacle is not be responsible for any of Stephen's actions despite the fact that Pinnacle stated that it had hired Stephens to collect the debt and deal with all credit reporting inquiries.

125.   According to Pinnacle, despite having hired Stephens to collect and take disputes on this debt, Pinnacle would not have vicarious liability for any claims against Stephens for failure to communicate that the disputed debt is disputed.

126.   Pinnacle claims that it does not have vicarious liability for its agents failure to take or report the dispute this claim essentially proves the scheme which is to avoid reporting the dispute of debtors in order to have card blanche when it comes to using credit reporting as a means of payment extraction.

127.   In this case, Stephens specifically told the Plaintiff that it knows nothing about credit reporting, and that Plaintiff must contact the credit reporting agency on his own.

128.   Plaintiff specifically asked if Pinnacle would report the dispute when re-reporting the debt to the credit reporting agency the next month. Defendant Stephens declined to answer, most notably after disputing the debt with Pinnacle and Stephens, Pinnacle went and reported the debt yet failed to notate that dispute.

129.   Defendant Stephens was handling debts that were being reported to the credit bureau on a daily basis in fact upon information and belief a large part of those debts are effectively

collected since they show up on the credit report as a delinquent debt owed to Pinnacle and debtors in need of protecting their credit are coerced in to making payment.

130.  It is unfair and unconscionable that defendant Pinnacle and Stephens can use the credit reporting tool to extract payment from debtors yet when the consumer wishes to have his or her dispute reported to the credit reporting agency, Stephens claims to know nothing about the credit reporting dispute requirements and then the defendants do not actually forward the dispute when communicating further.

131.  Plaintiff did in fact dispute the debt with both defendants yet neither one of them registered the dispute.

132.  Upon information and belief, Defendants did not forward the dispute and they did not take adequate measures to forward the dispute to the credit reporting agencies.

133.  Upon information and belief, Stephens is an accomplice to Pinnacle in circumventing the reporting of mandatory disputes to the credit reporting agencies.

134.  Upon information and belief, Defendant Stephens knows that Defendant Pinnacle's main leverage over debtors is Pinnacle's credit reporting tool, and Defendant Stephens, by collecting on these debts, are by way of extension using the illegal leverage in order to coerce debtors into paying disputed debts.

135.  Upon information and belief, Stephens is also aware that by helping Pinnacle avoid reporting disputes, it effectively increases the amount of disputed debts paid through credit reporting coercion making it more lucrative for the both of them to engage in this abusive scheme.

136.  Upon information and belief, Defendants and their employees intentionally denied the Plaintiff his dispute rights afforded to him under the FDCPA.

137. Upon information and belief, Defendants and their employees wrongfully stated to the Plaintiff that he must have a reason to dispute a debt.

138. Upon information and belief, Defendants and their employees by intentionally denying the Plaintiff and any other debtor to dispute the debt orally and without a valid reason, unfairly intimidate and force debtors in to paying disputed debts.

139. Upon information and belief, Defendants and their employees failed to communicate that a disputed debt is disputed.

140. The Defendants' employees who spoke with Plaintiff intended to speak the said words to the Plaintiff.

141. The acts and omissions of the Defendants and their employees done in connection with efforts to collect a debt from the Plaintiff were done intentionally and willfully.

142. Upon information and belief, Defendants and their employees intentionally and willfully violated the FDCPA and do so as a matter of pattern and practice by not letting any of the class members discuss the debt with an agent who has knowledge of what is reported on the credit report.

143. Most importantly as mentioned above, during the month of April, 2015, the Plaintiff pulled his credit report with the national credit bureaus.

144. Pinnacle communicated with the credit bureaus concerning his debt following Plaintiff's March 17, 2015 telephone call and when reporting the debt with the credit bureaus following Plaintiff's March 17, 2015 telephone call disputing the debt, the Defendants respectively failed to report the disputed debt as disputed in violation of 15 U.S.C. § 1692e(8).

145. Pinnacle reported the purported debt with the credit bureaus after Plaintiff's March 17,

2015 telephone call to Pinnacle.

146. Pinnacle failed to communicate that the disputed debt is disputed.  See Exhibit A.

147. Pinnacle violated the FDCPA since it reported information about the debt that it knew to be false at the time that the April 11th reporting was made. See Janjua v. Ocwen Loan Servicing LLC, 1:14-cv-06303-CBA-JO (E.D.N.Y. Feb. 26, 2016). (Bagley, J.) ("[T]he plain language of 1692e(8), indicates that a debt collector violates this provision if it communicates information about a debt that it knows or should know to be false at the time the communication is made.")

148. Upon information and belief, when re-reporting the debt with the credit bureaus, the Defendants respectively failed to report the disputed debt as disputed in violation of 15 U.S.C. § 1692e(8).

149. As an actual and proximate result of the acts and omissions of the Defendants and their employees, Plaintiff has suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional stress, acute embarrassment and suffering for which he should be compensated in an amount to be established by a jury at trial.

## AS AND FOR A FIRST CAUSE OF ACTION

*Violations of the Fair Debt Collection Practices Act brought by Plaintiff on behalf of himself and the members of a class, as against the Defendants.*

150. Plaintiff re-states, re-alleges and incorporates herein by reference, paragraphs one (1) through one hundred forty nine (149) as if set forth fully in this cause of action.

151. This cause of action is brought on behalf of Plaintiff and the members of a class.

152. The class consists of all persons whom Defendants' records reflect resided in the State of New York who communicated with Defendants' representatives within one year prior to the date of the within complaint up to the date of the filing of the complaint; (a) the

Defendants did not have the proper credit reporting information; and (b) when re-reporting the debt with the credit bureaus, the Defendants failed to report the disputed debt as disputed; and (c) the Defendants made false statements in violation of 15 U.S.C. §§ 1692e(8) and 1692e(10).

153.   Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

    A.   Based on the fact that form telephonic communications are at the heart of this litigation, the class is so numerous that joinder of all members is impracticable.

    B.   There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members. The principal question presented by this claim is whether the Defendants violated the FDCPA.

    C.   The only individual issue is the identification of the consumers who had such communications with the Defendant (*i.e.* the class members), a matter capable of ministerial determination from the records of Defendants.

    D.   The claims of the Plaintiff are typical of those of the class members. All are based on the same facts and legal theories.

    E.   The Plaintiff will fairly and adequately represent the class members' interests. The Plaintiff has retained counsel experienced in bringing class actions and collection-abuse claims. The Plaintiff's interests are consistent with those of the members of the class.

154.   A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the

FDCPA. 15 U.S.C. § 1692(k). The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

155.    If the facts are discovered to be appropriate, the Plaintiff will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

156.    Collection attempts, such as those made by the Defendants are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

### *Violations of the Fair Debt Collection Practices Act*

157.    The Defendants' actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

158.    Because the Defendants violated the Fair Debt Collection Practices Act, the Plaintiff and the members of the class are entitled to damages in accordance with the Fair Debt Collection Practices Act.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against the Defendants and award damages as follows:

A. Statutory and actual damages provided under the FDCPA, 15 U.S.C. § 1692(k);

B. Attorney fees, litigation expenses and costs incurred in bringing this action; and

C. Any other relief that this Court deems appropriate and just under the circumstances.

## AS AND FOR A SECOND CAUSE OF ACTION

***Violations of the Fair Debt Collection Practices Act brought by Plaintiff on an individual basis***

159.   Plaintiff re-states, re-alleges, and incorporates herein, any and all paragraphs in this action, that reference the Plaintiff's being unable to properly dispute the alleged debt orally, and that when re-reporting the debt post dispute to the credit bureaus, the Defendants failed to report the disputed debt as disputed.

160.   That on or about March 17, 2015, the Plaintiff called and spoke to a representative from Defendant Pinnacle and Stephens.

161.   During the calls, the Plaintiff attempted to dispute the debt, yet the Defendants did not report the dispute.

162.   Defendant Stephens did not know about any credit reporting procedures and also demanded to know the nature of the Plaintiff's dispute.

163.   The Defendants both failed to communicate that a disputed debt is disputed, in violation of 15 U.S.C. § 1692e(8).

***Violations of the Fair Debt Collection Practices Act***

164.   The Defendants' actions as set forth above in the within complaint violate the Fair Debt Collection Practices Act.

165.   Because the Defendants violated the Fair Debt Collection Practices Act, the Plaintiff is entitled to damages in accordance with the Fair Debt Collection Practices Act.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against the Defendants and award damages as follows:

      A. Statutory and actual damages provided under the FDCPA, 15 U.S.C. § 1692(k); And

B.  Attorney fees, litigation expenses and costs incurred in bringing this action; and

C.  Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Cedarhurst, New York
July 20, 2016

_____/s/ Adam J. Fishbein_____
Adam J. Fishbein, P.C.  (AF-9508)
Attorney At Law
**Attorney for the Plaintiff**
483 Chestnut Street
Cedarhurst, New York 11516
Telephone (516) 791-4400
Facsimile (516) 791-4411

Plaintiff requests trial by jury on all issues so triable.

_____/s/ Adam J. Fishbein____
Adam J. Fishbein (AF-9508)